William Calloway, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. Gimbel Brothers, Inc., Intervening Party, Respondent.

Argued February 4, 1980, before Judges CRUM-LISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Andrew F. Erba,* for petitioner.

*William J. Kennedy,* with him *David Confer,* Assistant Attorneys General, for respondent.

*Brenda C. Kinney,* with her *Jane Ruddell, Schnader, Harrison, Segal & Lewis,* for intervening party respondent.

OPINION BY JUDGE MENCER, May 9, 1980:

William Calloway (claimant) appeals a decision of the Unemployment Compensation Board of Review (Board) which denied him benefits under Section 402 (b)(1) of the Unemployment Compensation Law (Law),[1] 43 P.S. §802(b)(1), for terminating his employment without cause of a necessitous and compelling nature.

Claimant was employed by Gimbel Brothers, Inc., as a contingent employee, *i.e.,* one who is available for full-time or part-time work and is assigned work, depending on its availability, on a weekly basis, either by a preset weekly schedule or by special assignment upon inquiry at the personnel office. It is undisputed that each contingent employee is responsible for obtaining his assignment weekly by calling or stopping at the personnel office.

In late November 1977, claimant agreed to be transferred from the sales floor to the stock room because he was told that the cap he was wearing in connection with a religious observance was not permitted on the sales floor under Gimbel's regulations. As a result, claimant filed complaints alleging discrimination, both internally with Gimbel and with the Human Relations Commission. Subsequent to the transfer, Claudia Cutler, the personnel representative in charge of contin-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended.*

gent employees, decided that she 'would specially assign work for claimant rather than preschedule it as before and directed that claimant's calls concerning his assignment be transferred to her.

The referee found that claimant failed to call the personnel office to obtain his work assignment subsequent to December 3, 1977, his last day of work,[2] and concluded that claimant thereby abandoned his work without cause of a necessitous and compelling nature, thus rendering him ineligible for benefits. After a remand for an additional hearing, the Board affirmed and this appeal followed.

Claimant challenges the Board's crucial fourth finding of fact:

> 4. Subsequent to December 3, 1977, the claimant did not contact the employer concerning his working hours and his contingent employment; the employer received no phone call from the claimant from December 3, 1977 to February 6, 1978.

He argues that, in so finding, the Board capriciously disregarded claimant's testimony to the contrary, *i.e.*, that he did call for his assignment and was advised simply that his name was not on the schedule. "Capricious disregard" has consistently been defined as "a deliberate disregard of competent testimony which one of ordinary intelligence could not possibly have avoided in reaching the result." *See Houff Transfer, Inc. v. Unemployment Compensation Board of Re-*

---

[2] The record reflects confusion in Gimbel's evidence regarding claimant's last day and claimant's testimony on the issue is also uncertain. If there is an inaccuracy, *i.e.*, if his last day was December 6 rather than December 3, we do not believe it warrants a remand, since there is evidence to support the finding and since, even if inaccurate, the ultimate resolution of the case will not be affected. *See Wetzel v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 195, 370 A.2d 415 (1977).

*view,* 40 Pa. Commonwealth Ct. 238, 397 A.2d 42 (1979). Since the finding is wholly supported by Cutler's testimony, we cannot conclude that claimant's testimony was capriciously disregarded. Rather, the Board was acting within the scope of its authority to resolve conflicts in evidence and questions of credibility, *see Kanouse v. Unemployment Compensation Board of Review,* 9 Pa. Commonwealth Ct. 188, 305 A.2d 782 (1973), and we find no reason, on this record, to disturb its finding. *See Unemployment Compensation Board of Review v. Metzger,* 28 Pa. Commonwealth Ct. 571, 368 A.2d 1384 (1977).

Likewise, there is no support in the record for claimant's argument that the Board capriciously disregarded evidence that the change in Gimbel's scheduling practice as to him was made in retaliation for his discrimination complaints.[3] There is no evidence that Gimbel's action resulted from a retaliatory motive, and the record does not reveal the relative dates of these events.

Finally, we find no merit in claimant's argument that his receiving assignments directly from Cutler constituted a material change in the conditions of employment, justifying termination or, alternatively, resulting in a constructive discharge. The employer's uncontradicted evidence clearly indicated the change in scheduling was merely an internal administrative change which only affected members of the personnel staff who received calls from contingent employees

---

[3] A remand is not necessary, as claimant asserts, in order to make findings with regard to evidentiary matters allegedly disregarded by the Board. While an adjudication must include all findings necessary to resolve issues raised by the evidence which are relevant to the decision, it need not always include findings regarding all allegations and defenses raised by a party. *See Unemployment Compensation Board of Review v. Walton,* 21 Pa. Commonwealth Ct. 47, 343 A.2d 70 (1975). We believe the Board made sufficient and necessary findings in this case.

and who were directed to refer claimant's calls to Cutler. Claimant's responsibility to contact the personnel office for his assignments remained unchanged.

Therefore, we enter the following

ORDER

AND Now, this 9th day of May, 1980, the order of the Unemployment Compensation Board of Review, dated January 2, 1979, denying unemployment benefits to William Calloway, is affirmed.

President Judge BOWMAN did not participate in the decision in this case.